UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY
**Caption in Compliance with D.N.J. LBR 9004-1**

STRAFFI & STRAFFI LLC
Daniel E. Straffi
670 Commons Way
Toms River, NJ 08755
Telephone: (732) 341-3800

Attorneys for Daniel E. Straffi, Chapter 7 Trustee

In re:

DEMZA MASONRY, LLC

    Debtor.

DANIEL E. STRAFFI, CHAPTER 7 TRUSTEE,

    Plaintiff,

v.

AMAZON.COM, LLC

    Defendant.

Chapter 7

Case No. 21-18868 (CMG)

Honorable Christine M. Gravelle

Adv. Pro. No. 23-      (CMG)

**COMPLAINT TO AVOID AND RECOVER FRAUDULENT TRANSFERS
AND DISALLOW CLAIMS PURSUANT TO 11 U.S.C. §§ 544, 548, 550 AND 502(d)**

Daniel E. Straffi, Chapter 7 Trustee (the "**Trustee**" or the "**Plaintiff**") for the bankruptcy estate (the "**Estate**") of Demza Masonry, LLC (the "**Debtor**") by way of this complaint (the "**Complaint**") against Amazon.com LLC (the "**Defendant**"), respectfully alleges, upon information and belief, as follows:

**JURISDICTION AND VENUE**

1. This adversary proceeding arises out of the Debtor's bankruptcy case and is commenced pursuant to sections 502(d), 541, 544, 548, 550 and 551 of title 11 of the United States Code (the "**Bankruptcy Code**") and Rules 3007, 7001 and 7008 of the Federal Rules of

123933745-1

Bankruptcy Procedure.

2. This Court has jurisdiction over this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334.

3. This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (B), (C), (E), (H) and (O). If necessary, the Trustee consents to the entry of a final order or judgment by this Court.

4. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## PARTIES

5. The Plaintiff is the duly appointed Chapter 7 Trustee for the Estate, and has standing and all due authority to bring the claims set forth herein on behalf of the Estate by operation of, *inter alia*, sections 105, 323, 541, 544, 548 and 550 of the Bankruptcy Code.

6. Defendant, Amazon.com LLC is a limited liability company with its principal place of business at 410 Terry Avenue North, Seattle, Washington 98109-5210, conducts business and maintains multiple business facilities within New Jersey and may be served with process by any manner of service authorized by Bankruptcy Rule 7004.

## NON-PARTIES

7. The Debtor is a New Jersey limited liability company that previously operated from a facility located at 15 High Street, Whitehouse Station, New Jersey 08889 (the "**Property**").

8. During all relevant periods prior to the Petition Date, the Debtor was wholly owned by Willie J. Dempsey ("**Dempsey**") and operated as a contractor in the commercial construction industry providing brick, block and masonry construction services.

9. Dempsey is also the sole owner of W. Dempsey LLC ("**WDLLC**"), an entity that owns the Property and acquired it using funds provided by the Debtor, and W. J. Contracting. Corp. ("**WJC**" and together, with WDLLC, the "**Non-Debtor Entities**"), a full-service

construction contractor that provides extensive and diversified experience in new construction and exterior and interior renovations for customers in the state of New York.

10. Although wholly owned by Dempsey, the Debtor's day-to-day business operations were managed and controlled by Joseph M. Speranza ("**Speranza**" and together, with Dempsey, the "**Principals**"), its Vice President and chief estimator. During all relevant periods prior to the Petition Date, Speranza dictated, controlled, managed and/or had the authority all aspects of the Debtor's day-to-day operations including: (i) paying bills and executing checks; (ii) entering into contracts and financial transactions; (iii) hiring, firing and scheduling employees; (iv) setting and paying wages, and dictating other terms and conditions of employment; and (v) maintaining equipment and facilities.

11. Although not involved with day-to-day operations, Dempsey was involved, had the authority to approve and often discussed with Speranza all material financial transactions involving the Debtor.

12. The Debtor filed for Chapter 11 bankruptcy protection with this Court on November 16, 2021 (the "**Petition Date**"). The case converted to a Chapter 7 proceeding by and order of the Court dated June 2, 2022 and the Trustee was duly appointed on June 6, 2022.

## ALLEGATIONS APPLICABLE TO ALL COUNTS

A. *The Debtor is the Successor to Speranza Brickwork, Inc.*

13. For all relevant periods prior to the Petition Date, the Debtor operated as a masonry subcontractor in the commercial, industrial, pharmaceutical and multi-unit residential new building construction sector.

14. Prior to joining the Debtor, Speranza owned and operated Speranza Brickwork Inc. ("**SBI**"), a masonry subcontractor that operated in a similar sector using unionized labor pursuant

to a collective bargaining agreement (the "**CBA**") with the B.A.C. Local 4 Pension Fund, the New Jersey B.A.C. Annuity Fund, the B.A.C. Local 5 Pension Fund, the New Jersey B.A.C. Health Fund, the New Jersey BM&P Apprentice and Education Fund, the Bricklayers & Trowel Trades International Pension Fund and the International Masonry Institute (collectively, the "**Funds**").

15. The Funds obtained two judgments (the "**Judgments**") against SBI for delinquent pension contributions owed under the CBA in 2014, and SBI filed for Chapter 7 bankruptcy protection in May 2015.

16. The Funds filed a proof of claim in the amount of $382,978.05 in SBI's bankruptcy case based on amounts owed under the Judgments and additional contributions owed under the CBA, which was ultimately allowed.

17. In December 2015, Speranza, Dempsey and Tim O' Brien ("**O'Brien**") formed, operated and/or financed a new masonry contracting business called Dempsey O'Brien and Speranza Masonry Construction LLC ("**DOS**") that operated from the Property. Dempsey financed DOS and Speranza served as its primary estimator. DOS ceased operations approximately six months later after it was discovered O'Brien was misappropriating funds.

18. In July 2016, the Debtor was formed with Speranza serving as its Vice President and running the Debtor's business operations.

19. In addition to operating from the Property, the Debtor worked for many of the same general contractors, used many of the same employees, used some of the same equipment and purchased insurance from the company and using the same broker as SBI.

20. On December 17, 2018, the Funds filed a complaint in the District Court (the "**District Court**") for the District of New Jersey (Case No. 18-17302) seeking to hold the Debtor liable for amounts owed with respect to the Judgments under the doctrines of alter ego and

4

successor liability.

21. On January 31, 2021, the District Court granted the Funds' summary judgment motion, finding that the Debtor was the successor to SBI, liable for its debts and obligations to the Funds and subject to the CBA. The District Court entered judgment against the Debtor and in favor of the Funds for $837,853.41 (the "**Funds Obligation**").

22. On July 23, 2021, the Funds filed a writ of execution against the Debtor that effectively froze the Debtor's bank accounts.

23. Because of the Funds' judgment, and once subject to the terms of the CBA, the Debtor lacked sufficient capital and the means to borrow from traditional sources to operate its business.

24. The Debtor filed for Chapter 11 bankruptcy protection on the Petition Date purportedly to modify the terms of the CBA such that it could reorganize.

B.    *The Debtor, While it was Insolvent, Made Various Transfers to the Defendant With Respect to Obligations Owed by the Principals and/or the Non-Debtor Entities*

25. From its inception and during all relevant time periods prior to the Petition Date, the Debtor owned few assets, the aggregate value of which, based on a fair valuation, was less than its liabilities.

26. Indeed, as per its year-end balance sheets, the Debtor owned assets valued at and owed liabilities of: (i) $37,472.91 and $206,184.98, respectively, at the end of 2018; (ii) $80,089.16 and $260,616.69, respectively, at the end of 2019; and (iii) $209,846.75 and $377,948.15, respectively, at the end of 2020. Notably, the (at the time disputed) Funds Obligation of $837,853.41 was not included among the liabilities owed by the Debtor on each of the applicable balance sheets and the Debtor was still insolvent during those time periods.

27. According to its schedules of assets and liabilities, the Debtor, on the Petition Date,

had assets with an aggregate value of $58,819, consisting largely of cash ($27,274), one vehicle ($17,085) and certain machinery and equipment ($17,710) and reported liabilities in excess of $850,000. Notably, the value of the vehicles had declined from $98,227.49 at the end of 2020.

28. There have also been six (6) proofs of claim filed against the Estate for additional liabilities totaling about $600,000, many of which accrued between 2017 and 2019 (including a claim by the National Labor Relations Board for back pay from 2017 in excess of $200,000) and were not included as liabilities on the applicable balance sheets.

29. From a balance sheet perspective, therefore, the Debtor was clearly insolvent for all relevant periods prior to the Petition Date.

30. From its inception, the revenues generated by the Debtor's business were insufficient to satisfy the liabilities and expenses of the Debtor and SBI under the CBA and otherwise. As, such, the Debtor was also severely undercapitalized and insolvent from its inception.

31. During all relevant periods prior to the Petition Date, the Debtor was also unable to pay its obligations as they became due.

32. Indeed, during many periods prior to the Petition Date, the Debtor generated insufficient revenues and often had to rely on cash infusions provided by Dempsey directly or through the Non-Debtor Entities to fund its day-to-day operations.

33. Despite the Debtor's insolvency and limited resources, the Principals engaged in a pattern of conduct by which they directed, allowed or caused the Debtor to pay monies to the Principals directly or make payments to various third parties on account of debts, obligations and expenses owed and incurred by the Principals personally and/or by the Non-Debtor Entities, and not the Debtor.

34. During the four-year period before and ending on the Petition Date, the Debtor made multiple transfers in the aggregate amount of $44,782.54 (collectively, the "**Transfers**") to the Defendant.

35. The Transfers were made by check, ACH, wire or online transfer, electronic withdrawal, debit card purchase and/or otherwise from accounts owned by the Debtor, and are detailed on the schedule attached hereto as Exhibit "A," which is incorporated herein by reference.

36. As detailed on Exhibit "A," included among the Transfers are payments made during the two-year period prior to the Petition Date in the aggregate amount of $29,117.94 (collectively, the "**Two-Year Transfers**").

37. All or a portion of the Transfers were made with respect to respect to online purchases of products that benefited the Principals and/or the Non-Debtor Entities, and not the Debtor.

## FIRST CAUSE OF ACTION
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 544(b) and 550; §§ 25:2-25(a) and 25-2-26)

38. The Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

39. The Debtor made the Transfers without receiving any, or reasonably equivalent, value in exchange therefor.

40. The Transfers were made with the actual intent to hinder, delay and defraud the Debtor's creditors pursuant to N.J.S.A. §§ 25:2-25 and 25:2-26 in that, *inter alia*: (i) such transfers were made for the benefit of an insider; (ii) the Debtor concealed such transfers from its creditors; and/or (iii) the Debtor was or became insolvent shortly after such transfers were made or incurred.

41. On the dates the Transfers were made, the Debtor was insolvent, engaged or about

to engage in a business or a transaction for which its remaining assets were unreasonably small in relation or intended to, or believed or should have believed that it would, incur debts beyond its ability to pay as they became due.

42. The Debtor was insolvent on the dates the Transfers were made or became insolvent as a result of making such transfers.

43. The Transfers are fraudulent within the meaning of N.J.S.A. §§ 25:2-25(a).

44. On the dates the Transfers were made, the Debtor had one or more unsecured creditors within the meaning of sections 502 and 544(b) of the Bankruptcy Code.

45. The Transfers were made within four years of the Petition Date.

46. The Defendant is the initial transferee of the Transfers, the entity for whose benefit the Transfers were made, or the immediate or mediate transferee of the initial transferee receiving the Transfers.

47. The Plaintiff may recover the value of the Transfers from the Defendant pursuant to section 550 of the Bankruptcy Code and applicable non-bankruptcy law including N.J.S.A. §§ 25:2-2, *et seq*.

**WHEREFORE**, the Plaintiff respectfully requests the entry of a judgment against the Defendant avoiding the Transfers in the amount of $44,782.54 and awarding the Plaintiff costs, pre- and post-judgment interest and such other relief the Court deems equitable and just.

### SECOND CAUSE OF ACTION
**AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS**
**(11 U.S.C. §§ 544 and 550; N.J.S.A. §§ 25:2-25(b) and 25:2-27(a))**

48. The Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

49. The Debtor made the Transfers without receiving any, or reasonably equivalent,

value in exchange therefor.

50. On the dates the Transfers were made, the Debtor was engaged or about to engage in a business or a transaction for which its remaining assets were unreasonably small in relation or intended to, or believed or should have believed that it would, incur debts beyond its ability to pay as they became due.

51. The Debtor was insolvent on the date the Transfers were made or became insolvent as a result of making such transfers.

52. The Transfers are fraudulent pursuant to N.J.S.A. § 25:2-25(b).

53. At the time the Transfers were made, the Debtor had one or more unsecured creditors within the meaning of sections 502 and 544(b) of the Bankruptcy Code.

54. The Transfers were made within four years of the Petition Date.

55. The Defendant is the initial transferee of the Transfers, the entity for whose benefit the Transfers were made, or the immediate or mediate transferee of the initial transferee receiving the Transfers.

56. The Plaintiff may recover the value of the Transfers from the Defendant pursuant to section 550 of the bankruptcy code and applicable non-bankruptcy law including N.J.S.A. §§ 25:2-2, *et seq*.

**WHEREFORE**, the Plaintiff respectfully requests the entry of a judgment against the Defendant avoiding the Transfers in the amount of $44,782.54 and awarding the Plaintiff costs, pre- and post-judgment interest and such other relief deemed equitable and just.

### THIRD CAUSE OF ACTION
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 548(a)(1)(B) and 550)

57. The Plaintiff realleges and incorporates by reference the allegations set forth in the

preceding paragraphs as if fully set forth herein.

58. The Defendant was not a creditor of the Debtor at the time the Two-Year Transfers were made.

59. The Two-Year Transfers were not made on account of debts and obligations owed by the Debtor.

60. The Debtor did not receive any property, goods, services, indirect benefits and/or value of any kind for or with respect to the Two-Year Transfers.

61. The Debtor received no, or less than reasonably equivalent, value in exchange for the Two-Year Transfers.

62. The Debtor was insolvent, became insolvent, or intended to or believed it would incur debts beyond its ability to pay as such debts matured, at the time the Two-Year Transfers were made or as a result of the Two-Year Transfers being made, and/or was engaged, or about to become engaged, in a business or transaction for which the property remaining in its hands after the Two-Year Transfers was unreasonably small capital.

63. The Two-Year Transfers were made within two years of the Petition Date.

64. Under section 548(a)(1)(B) of the Bankruptcy Code, the Plaintiff is entitled to avoid the Two-Year Transfers.

65. The Defendant is the initial transferee of the Two-Year Transfers, the entity for whose benefit the Two-Year Transfers were made, or the immediate or mediate transferee of the initial transferee receiving the Two-Year Transfers.

66. The Plaintiff is entitled to recover the value of the Two-Year Transfers from the Defendant pursuant to section 550 of the Bankruptcy Code.

**WHEREFORE**, the Plaintiff respectfully requests the entry of a judgment against the

Defendant avoiding the Two-Year Transfers in the amount of $29,117.94 and awarding the Plaintiff costs, pre- and post-judgment interest and such other relief deemed equitable and just.

## FOURTH CAUSE OF ACTION
### AVOIDANCE AND RECOVERY OF FRAUDULENT TRANSFERS
### (11 U.S.C. §§ 548(a)(1)(A) and 550)

67. The Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

68. The Debtor made the Two-Year Transfers with the actual intent to hinder, delay or defraud creditors to which the Debtor was or became thereafter indebted.

69. The Two-Year Transfers were made within two years of the Petition Date.

70. Under section 548(a)(1)(A) of the Bankruptcy Code, the Plaintiff is entitled to avoid the Two-Year Transfers.

71. The Defendant is the initial transferee of the Two-Year Transfers, the entity for whose benefit the Two-Year Transfers were made, or the immediate or mediate transferee of the initial transferee receiving the Two-Year Transfers.

72. The Plaintiff is entitled to recover the value of the Two-Year Transfers from the Defendant pursuant to section 550 of the Bankruptcy Code.

**WHEREFORE**, the Plaintiff respectfully requests the entry of a judgment against the Defendant avoiding the Two-Year Transfers in the amount of $29,117.94 and awarding the Plaintiff costs, pre- and post-judgment interest and such other relief deemed equitable and just.

## FIFTH CAUSE OF ACTION
### DISALLOWANCE OF CLAIMS
### (11 U.S.C. § 502(d))

232. The Plaintiff realleges and incorporates by reference the allegations set forth in the preceding paragraphs as if fully set forth herein.

233. To the extent the Defendant is found liable with respect to the Transfers, any and all claims that the Defendant may assert against the Estate pursuant to section 502(h) of the Bankruptcy Code or otherwise must be disallowed until the Defendant pays the Trustee the amount of any such liability.

**WHEREFORE**, the Plaintiff respectfully requests the entry of a judgment disallowing any claims held by the Defendant against the Estate and awarding all other relief deemed equitable and just.

## RESERVATION OF RIGHTS

234. The Plaintiff reserves the right, to the extent permitted under the Bankruptcy Code or by agreement, to assert additional claims or causes of action against any third party relating to the subject matter of this action or otherwise.

235. During the course of this proceeding, the Plaintiff may learn (through discovery or otherwise) of additional avoidable and recoverable transfers made to the Defendant other than those identified herein and on the Exhibit hereto. Because he intends to avoid and recover any and all transfers made by the Debtor to or on behalf of Defendant as permitted under applicable law, the Plaintiff reserves the right to: (i) amend this Complaint to include, identify and/or specify additional transfers, information regarding the claims for relief herein, claims or causes of action, information regarding or modifications to the name of, the Defendant and/or other defendants; and (ii) have such amendments relate back to this Complaint.

Dated: November 15, 2023　　　　　　　　STRAFFI & STRAFFI LLC

　　　　　　　　　　　　　　　　　　　　By: /s/
　　　　　　　　　　　　　　　　　　　　Attorneys for Daniel E. Straffi, Chapter 7 Trustee

12

| EXHIBIT "A: Transfers to Amazon.com LLC (November 16, 2017 to November 16, 2021) | | | | |
|---|---|---|---|---|
| Payment Date | Bank/Account No. | Payment Type | Section 544 | Section 548 |
| 1/19/2018 | PNC x1544 | Debit Card | $225.33 | |
| 1/22/2018 | PNC x1544 | Debit Card | $57.51 | |
| 1/29/2018 | PNC x1544 | Debit Card | $11.55 | |
| 1/30/2018 | PNC x1544 | Debit Card | $27.94 | |
| 1/30/2018 | PNC x1544 | Debit Card | $41.52 | |
| 1/30/2018 | PNC x1544 | Debit Card | $63.25 | |
| 1/30/2018 | PNC x1544 | Debit Card | $129.50 | |
| 2/2/2018 | PNC x1544 | Debit Card | $16.94 | |
| 2/22/2018 | PNC x1544 | Debit Card | $495.45 | |
| 2/22/2018 | PNC x1544 | Debit Card | $1,184.95 | |
| 2/23/2018 | PNC x1544 | Debit Card | $153.90 | |
| 3/5/2018 | PNC x1544 | Debit Card | $461.81 | |
| 3/5/2018 | PNC x1544 | Debit Card | $815.16 | |
| 3/8/2018 | PNC x1544 | Debit Card | $7.75 | |
| 3/8/2018 | PNC x1544 | Debit Card | $12.99 | |
| 3/8/2018 | PNC x1544 | Debit Card | $92.99 | |
| 3/9/2018 | PNC x1544 | Debit Card | $41.79 | |
| 3/9/2018 | PNC x1544 | Debit Card | $74.93 | |
| 3/26/2018 | PNC x1544 | Debit Card | $100.00 | |
| 3/26/2018 | PNC x1544 | Debit Card | $104.94 | |
| 3/30/2018 | PNC x1544 | Debit Card | $83.38 | |
| 4/2/2018 | PNC x1544 | Debit Card | $462.40 | |
| 4/4/2018 | Chase x2132 | Debit Card | $85.29 | |
| 4/6/2018 | PNC x1544 | Debit Card | $49.80 | |
| 4/12/2018 | PNC x1544 | Debit Card | $25.61 | |
| 4/12/2018 | PNC x1544 | Debit Card | $106.13 | |
| 4/13/2018 | PNC x1544 | Debit Card | $10.07 | |
| 5/9/2018 | PNC x1544 | Debit Card | $904.70 | |
| 5/10/2018 | PNC x1544 | Debit Card | $121.35 | |
| 5/17/2018 | PNC x1544 | Debit Card | $1,540.06 | |
| 5/21/2018 | PNC x1544 | Debit Card | $1,859.94 | |
| 5/30/2018 | PNC x1544 | Debit Card | $373.33 | |
| 5/31/2018 | PNC x1544 | Debit Card | $134.29 | |
| 6/1/2018 | PNC x1544 | Debit Card | $20.79 | |
| 6/4/2018 | PNC x1544 | Debit Card | $373.33 | |
| 6/7/2018 | PNC x1544 | Debit Card | $964.70 | |
| 7/2/2018 | PNC x1544 | Debit Card | $54.18 | |
| 7/3/2018 | PNC x1544 | Debit Card | $29.99 | |
| 7/3/2018 | PNC x1544 | Debit Card | $208.08 | |
| 7/16/2018 | PNC x1544 | Debit Card | $27.44 | |
| 7/19/2018 | PNC x1544 | Debit Card | $96.47 | |
| 8/7/2018 | PNC x1544 | Debit Card | $21.15 | |
| 8/7/2018 | PNC x1544 | Debit Card | $43.22 | |
| 8/13/2018 | PNC x1544 | Debit Card | $308.92 | |
| 8/29/2018 | PNC x1544 | Debit Card | $480.71 | |

| EXHIBIT "A: Transfers to Amazon.com LLC (November 16, 2017 to November 16, 2021) | | | | |
|---|---|---|---|---|
| Payment Date | Bank/Account No. | Payment Type | Section 544 | Section 548 |
| 8/31/2018 | PNC x5937 | Debit Card (various) | $460.77 | |
| 10/19/2018 | PNC x1544 | Debit Card | $25.98 | |
| 10/19/2018 | PNC x1544 | Debit Card | $43.99 | |
| 10/24/2018 | PNC x1544 | Debit Card | $9.89 | |
| 10/24/2018 | PNC x1544 | Debit Card | $40.67 | |
| 10/31/2018 | PNC x5937 | Debit Card (various) | $120.53 | |
| 11/5/2018 | PNC x1544 | Debit Card | $21.31 | |
| 11/5/2018 | PNC x1544 | Debit Card | $39.44 | |
| 11/28/2018 | PNC x1544 | Debit Card | $57.31 | |
| 11/30/2018 | PNC x1544 | Debit Card | $25.59 | |
| 11/30/2018 | PNC x1544 | Debit Card | $43.78 | |
| 11/30/2018 | PNC x5937 | Debit Card (various) | $524.40 | |
| 12/27/2018 | PNC x1544 | Debit Card | $54.18 | |
| 12/31/2018 | PNC x5937 | Debit Card (various) | $627.34 | |
| 5/15/2019 | Chase x2132 | Debit Card | $157.94 | |
| 6/10/2019 | Chase x2132 | Debit Card | $42.64 | |
| 7/27/2019 | Chase x2132 | Debit Card | $204.03 | |
| 8/21/2019 | Chase x2132 | Debit Card | $593.59 | |
| 11/6/2019 | Chase x2132 | Debit Card | $65.69 | |
| 2/7/2020 | Chase x2132 | Debit Card | $63.54 | $63.54 |
| 4/17/2020 | Chase x2132 | Electronic WD | $26,166.50 | $26,166.50 |
| 5/18/2020 | Chase x2132 | Debit Card | $16.74 | $16.74 |
| 5/18/2020 | Chase x2132 | Debit Card | $17.71 | $17.71 |
| 5/18/2020 | Chase x2132 | Debit Card | $36.86 | $36.86 |
| 7/24/2020 | Chase x2132 | Debit Card | $41.57 | $41.57 |
| 7/27/2020 | Chase x2132 | Debit Card | $32.52 | $32.52 |
| 7/27/2020 | Chase x2132 | Debit Card | $38.42 | $38.42 |
| 8/27/2020 | Chase x2132 | Debit Card | $20.24 | $20.24 |
| 8/31/2020 | Chase x2132 | Debit Card | $84.10 | $84.10 |
| 8/31/2020 | Chase x2132 | Debit Card | $236.10 | $236.10 |
| 9/8/2020 | Chase x2132 | Debit Card | $39.42 | $39.42 |
| 9/9/2020 | Chase x2132 | Debit Card | $34.10 | $34.10 |
| 9/10/2020 | Chase x2132 | Debit Card | $40.24 | $40.24 |
| 10/23/2020 | Chase x2132 | Debit Card | $1,739.00 | $1,739.00 |
| 11/4/2020 | Chase x2132 | Debit Card | $15.97 | $15.97 |
| 11/25/2020 | Chase x2132 | Debit Card | $349.26 | $349.26 |
| 1/13/2021 | Chase x2132 | Debit Card | $64.33 | $64.33 |
| 5/7/2021 | Chase x2132 | Debit Card | $81.32 | $81.32 |
| | | Totals: | $44,782.54 | $29,117.94 |